

FILED

2005 Nov-08  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DARRYL BOWIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. MC-03-RRA-2162-S** |
| | ) | |
| **PERSONNEL BOARD OF** | ) | |
| **JEFFERSON COUNTY, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **JOYCE G. SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. MC-03-RRA-3068-S** |
| | ) | |
| **PERSONNEL BOARD OF** | ) | |
| **JEFFERSON COUNTY, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **SANDRA HENRY ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. MC-03-RRA-3076-S** |
| | ) | |
| **PERSONNEL BOARD OF** | ) | |
| **JEFFERSON COUNTY, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **BARBARA D. CARMICHAEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. MC-03-RRA-3081-S** |
| | ) | |
| **PERSONNEL BOARD OF** | ) | |
| **JEFFERSON COUNTY, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

```
                                              )
DARRYL BOWIE,                                 )
                                              )
        Plaintiff,                            )
                                              )
vs.                                           )        Civil Action No. MC-03-RRA-3223-S
                                              )
PERSONNEL BOARD OF                            )
JEFFERSON COUNTY, ALABAMA,                    )
                                              )
        Defendant.                            )
```

## MEMORANDUM OPINION AND ORDERS

Each of the claims addressed in this opinion is collateral to an enduring cluster

of consolidated and intervening class actions that have been pending in this court for

more than thirty-one years.[1]  A useful chronicle of that protracted litigation during its

first two decades, from 1974 to 1994, is contained in *Ensley Branch, N.A.A.C.P. v.*

*Seibels*, 31 F.3d 1548 (11th Cir. 1994) ("*Ensley II*").[2]  The following background is

---

[1] As Judge Carnes aptly observed in his decision for the Eleventh Circuit in *Birmingham Fire Fighters Ass'n 117 v. Jefferson County*, 280 F.3d 1289, 1290 (11th Cir. 2002), the longevity of this litigation is no "cause for celebration."

[2] Readers interested in a more complete history of the underlying actions can trace the broad outlines in the following *published* opinions (listed in chronological, not *Bluebook*, order):  *Ensley Branch of the N.A.A.C.P. v. Seibels*, 14 Fair Empl. Prac. Cas. (BNA) 670, 1977 WL 806 (N.D. Ala. 1977); *Ensley Branch of the N.A.A.C.P. v. Seibels*, 616 F.2d 812 (5th Cir. 1980) ("*Ensley I*"); *United States v. Jefferson County*, 28 Fair Empl. Prac. Cas. (BNA) 1834, 1981 WL 27018 (N.D. Ala. 1981); *United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983); *In re: Birmingham Reverse Discrimination Employment Litigation*, 37 Fair Empl. Prac. Cas. (BNA) 1, 1985 WL 1415 (N.D. Ala. 1985); *In re: Birmingham Reverse Discrimination Employment Litigation*, 39 Fair Empl. Prac. Cas. (BNA) 1431, 1985 WL 56690 (N.D. Ala. 1985); *In re: Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492 (11th Cir. 1987), *aff'd sub nom. Martin v. Wilks*, 490 U.S. 755 (1989); *Bennett v. Arrington*, 806 F. Supp. 926 (N.D. Ala. 1992);  *In re: Birmingham Reverse Discrimination Employment Litigation*, 20 F.3d 1525 (11th Cir. 1994); *Ensley Branch of the N.A.A.C.P. v. Seibels*, 31 F.3d 1548 (11th Cir. 1994) ("*Ensley II*"); *Birmingham Firefighters Ass'n 117 v. Jefferson County*, 280 F.3d 1289 (11th Cir. 2002); *Birmingham Firefighters Ass'n 117 v. Jefferson County*, 290 F.3d 1250 (11th Cir. 2002).

provided to explain how each plaintiff's claim fits into the more recent annals.

The Personnel Board of Jefferson County, Alabama, is an independent governmental entity created pursuant to legislation originally enacted by the Alabama Legislature in 1935, reenacted in 1945, and generally referred to as either "the Enabling Act" or "Act No. 248."[3]

Although the Personnel Board shares responsibility for hiring and promoting county and municipal governmental employees with twenty-two "appointing authorities"[4] served by the Board,[5] it nevertheless is the principal civil service agency for public employees, because it is charged by Alabama law with the functions of

_____

[3] See Act No. 248, 1945 Acts of Alabama, at 376-400; Act No. 284, 1935 Acts of Alabama, at 691-713; see also 1940 Code of Alabama, Appendix § 645 et seq. (Recomp. 1958). The original 1935 Act and 1945 re-enactment were so-called "general acts of local application," meaning that the legislation applied only to Alabama counties and municipalities that satisfied population requirements specified in the statute. As a result of the population figures of 200,000 residents specified in the 1935 Act, and 400,000 residents in the 1945 Act, the enabling legislation has applied since its inception only to Jefferson County, the largest county in Alabama. See Act No. 248, 1945 Acts of Alabama § 2, at 377. Various sections of the enabling legislation have been amended many times during the intervening years.

[4] The Enabling Act defines the terms "appointing authority" or "appointing Power" as meaning a "person, officer, board, council, commission or other body including the County Board of Health whose lawful jurisdiction or powers are confined wholly or primarily within the territorial limits of such county and who or which possesses final power to appoint persons to services, jobs, offices or positions, the compensation of which is paid in whole or in part from the public funds of such county or from the public funds of a municipality in such county subject to this Act. . . ." Act No. 248, 1945 Acts of Alabama, § 1, at 376-77.

[5] The appointing authorities served by the Personnel Board include: the Jefferson County Commission; the Jefferson County Department of Health; the Jefferson County Emergency Management Agency; the Jefferson County Storm Water and Sewer Administration; the Jefferson County Personnel Board as an entity; and the cities of Birmingham, Bessemer, Fairfield, Fultondale, Gardendale, Graysville, Homewood, Hueytown, Irondale, Leeds, Midfield, Mountain Brook, Pleasant Grove, Tarrant, Trussville, Vestavia Hills, and Warrior.

designing and administering "employee selection procedures"[6] that produce "registers"[7] and "certificates"[8] of persons considered eligible for employment in, or promotion to, classified positions[9] within the various governmental appointing authorities.  The screening, testing, certification, and other functions of the Personnel Board's staff are supervised by a "Personnel Director,"[10] who is appointed by, and serves at the pleasure of, a three-person Board, the members of which are appointed

---

[6] The term "employee selection procedure" is defined by the *Uniform Guidelines on Employee Selection Procedures* as any measure, combination of measures, or procedure used as a basis for any employment decision, including the full range of assessment techniques from traditional paper and pencil tests, performance tests, training programs, or probationary periods and physical, education and work experience requirements through informal or casual interviews and unscored application forms.  *See* 29 C.F.R. § 1607.16(Q).  As used herein, the term describes the screening, testing, and certification procedures of the Personnel Board.  The Personnel Board does not make final employment selection decisions for the jurisdictions it serves.

[7] Applicants for employment by, or promotion within, the governmental "appointing authorities" served by the Personnel Board are listed on "registers of eligibles."

[8] Once a "register" of persons eligible for employment in, or promotion to, a particular job classification has been established, a governmental appointing authority served by the Board may request a "certificate of eligibles" when vacancies occur.  The certificate contains the names of the highest ranked candidates on the register who have indicated a desire to work for that particular governmental employer.  The number of persons appearing on the certificate is a function of the number of vacancies to be filled.  State law provides that the number of candidates to be certified to the appointing authority is equal to the number of vacancies to be filled plus nine.  *See* Ala. Code § 36-26-17 (1975).  Thus, if there is one vacancy, ten candidates are certified:  this is the basis for the parties' description of the certification process as the "Rule of Ten."

[9] The Board's enabling legislation excludes such positions as elected officials, certain appointed officials and professionals, and "common laborers" from the classified service.  *See* Acts No. 677 and 782, 1977 Acts of Alabama.

[10] At some undetermined point, the occupant of this position began to be called "Executive Director" by the three members of the Personnel Board, but the correct, statutory title remains either "Personnel Director" or "Director of Personnel."  *See* § 1 of Act No. 680 and § 4 of Act No. 684, 1977 Acts of Alabama (both amending § 12 of Act No. 248, 1945 Acts of Alabama, defining the "Duties of personnel director").

for six-year terms by a "Citizens Supervisory Commission."[11]

In an attempt to minimize confusion in the ensuing discussion, this court will employ the following conventions: the terms "Personnel Board" or "Board" reference the Personnel Board of Jefferson County, Alabama, *as an entity*, and *as distinguished from* "the three members of the Personnel Board" chosen by the so-called "Citizens Supervisory Commission."

For more than two decades the Personnel Board abjectly failed, if not refused, to fulfill its lawful obligations to design and administer employee selection procedures that complied with federal Constitutional and statutory requirements, as it had agreed to do in the consent decree first entered in 1981, then modified in 1995, and extended in December of 2000. Due to that protracted and obstinate abdication of responsibility, this court held the Personnel Board in contempt on July 8, 2002, and placed the entity under the control of a Receiver. There were many reasons for that draconian sanction, all of which were fully discussed in the memorandum opinion and

---

[11] Since the legislation creating the Jefferson County Personnel Board was originally enacted in 1935, the section providing for the method of selecting members of the "Citizens Supervisory Commission" was amended by nine Acts of the Alabama Legislature passed from 1939 through 1977. The current method of selecting those persons who may serve as members of the Citizens Supervisory Commission, however, was established by a final judgment entered by this court in *Woods v. Florence*, No. CV82-PT-2272-S (N.D. Ala. Apr. 29, 1985) (Propst, J.); *see also id.* (N.D. Ala. Jan. 31, 1985) (findings of fact and conclusions of law holding that portions of Section 5, Act. No. 248, 1945 Acts of Alabama, as subsequently amended, "have been amended and maintained with the intent to discriminate and continue to have an adverse impact on plaintiffs and other black citizens" in violation of the Fourteenth Amendment to the United States Constitution).

order filed as documents number 934 and 935, respectively, in the lead case styled *United States v. Jefferson County*, Civil Action No. CV-75-S-666-S (N.D. Ala. July 8, 2002) ("the Receivership Order").  In one sentence, however, this court was compelled to that step by the fact that all individuals connected with the Personnel Board in any capacity had ignored the ringing mandate of the Eleventh Circuit, directing this court to order the Board to develop and administer lawful selection procedures for public employees "*forthwith*, not at the casual pace the Board ha[d] passed off as progress" for more than a quarter-century.  *Ensley II*, 31 F.3d at 1578 (emphasis supplied).

Dr. Ronald R. Sims, who holds the "Floyd Dewey Gottwald Senior" Chair in the Graduate School of Business at the College of William and Mary in Williamsburg, Virginia, was appointed Receiver,[12] and assumed the powers previously held by both the Personnel Director and three-members of the Personnel Board.  This court directed Dr. Sims to perform the following specific duties, among others:

    (i)      assess the present organizational structure of the Personnel Board,

---

[12] Dr. Sims teaches, among other subjects, organizational behavior, leadership, change management, human resources management, and business ethics.  He has published extensively in the area of organizational behavior, including recent papers on change in public-sector organizations and team-building.  He previously served on the executive board of the Academy of Management's Organizational Development and Change Division, and he has successfully consulted on organizational development and change for over twenty-one years.

and design appropriate infrastructures, systems, and procedures that will institutionalize the ability to perform all functions — and particularly the functions of developing and administering lawful selection procedures for hiring and promotion in the classified services of the county, municipalities, and appointing authorities served by the Board — in an efficient, professional, and cost-effective manner[; and]

. . .

(k)     perform all other acts necessary to transform the Personnel Board into a strong and competent civil service agency with a clearly defined mission, the infrastructure, systems, and skills to support that mission, and, an agency that discharges all functions in an efficient, professional, and cost-effective manner in substantial compliance with all applicable federal and state laws and regulations[.][13]

To accomplish these and other ends, the Receivership Order vested the Receiver with "full power to direct, control, operate, manage, and administer the property, funds and employees of the Board," as well as with "all powers vested by Act No. 248 in the three members of the Personnel Board and Personnel Director, including the power to hire, promote, transfer, and remove subordinates as necessary."[14]   The Enabling

_____

[13] Doc. no. 935 in *United States v. Jefferson County,* Civil Action No. CV-75-S-666-S (N.D. Ala. July 8, 2002) (the "Receivership Order"), at ¶¶ 3(i), (k).

[14] *Id.* at ¶¶ 2(a) & (b).   The Board currently is in the process of transitioning from the Receivership back to independent control.   This court issued an order on March 18, 2005, setting forth a schedule for this transition of authority.   *See* doc. no. 1213 in the combined Civil Actions CV-75-S-666-S, CV-74-S-17-S, CV-74-S-12-S (Order Adopting Second Revised Transition Plan), at Exhibit 1 (Second Revised Transition Plan).   Pursuant to that order, the Board and its Personnel Director have resumed control of the Board's day-to-day operations, including both the institution and defense of lawsuits involving the Board, and the power to make employment decisions.   *See id.* at ¶¶ 11 & 12.   Nonetheless, at the time these lawsuits were filed, the Receiver still possessed all authority granted to him by the Receivership Order.

-7-

Act grants the Personnel Director, into whose shoes Dr. Sims stepped, the power to implement a reduction-in-force among employees serving on the Board's staff "[w]henever it is necessary because of lack of work, lack of funds or whenever it is advisable in the interest of economy."[15]

The three members of the Personnel Board were allowed to retain only certain, limited functions by the Receivership Order, including their "limited role in 'Step III' of the employee grievance procedure, as set forth in Rule 8.6 of the 1995 Rules and Regulations Adopted by the Personnel Board,[16] and Approved by the Citizens Supervisory Commission."[17]   Significantly, however, the Receivership Order also explicitly provided that the three-members of the Personnel Board were *not authorized* to perform the foregoing function with respect to *employees of the Personnel Board.*   Instead,

> with respect to any employee of the Board who files a grievance that proceeds to "Step III" of the employee grievance procedure, his or her right of appeal of the decision rendered by either a hearing officer or a grievance committee shall lie to a magistrate judge of this court, randomly drawn, *who shall apply the same standards of review as would otherwise be applied by the Personnel Board under Rule* 8.6 of the 1995 Rules and Regulations Adopted by the Personnel Board, and Approved

---

[15] *See* Act No. 248, 1945 Acts of Alabama, § 23, the full text of which is set out in Appendix I to this opinion.

[16] Rule 8.6 of the Personnel Board's 1995 Rules and Regulations subsequently was incorporated into Rule 15 of the Board's current Rules and Regulations, which applied to these claims.  The full text of Rule 15 is set out in Appendix II of this opinion.

[17] Receivership Order, at ¶ 11.

by the Citizens Supervisory Commission, *but for the existence of this court's order*.[18]

This court clarified an additional type of appellate jurisdiction vested in magistrate judges in an order entered on February 23, 2004, and providing that an employee of the Personnel Board could appeal to a magistrate judge of this court from the decision of the Receiver that his or her complaint was not subject to the Board's grievance process. The magistrate judge was directed to issue a decision "*solely as to the issue of whether the matter is grievable*."[19] If the parties objected to the

_____

[18] Receivership Order, at ¶ 11 (emphasis supplied). As recorded in note 16 *supra*, Rule 8.6 of the Personnel Board's 1995 Rules and Regulations was incorporated into Rule 15 of the Board's current Rules and Regulations, the text of which applied to these claims. The full text of Rule 15 is set out in Appendix II of this opinion. Rule 15.1 provides that "[a] grievance is a complaint by a Regular Employee or his or her representative alleging that action taken by a co-employee, supervisor or other person acting on behalf of the Regular Employee's Appointing Authority, substantially affected a term or condition of the Regular Employee's employment with an Appointing Authority." (The "Appointing Authority" for Board employees is the Board itself.) The grievance procedure outlined in Rule 15 has three steps. In "Step One," the employee submits her grievance to her immediate supervisor. *See* Appendix II, ¶ 15.5(a). If the employee is dissatisfied with the results of her "Step I" grievance, she may move to "Step II" by submitting her grievance to the head of the department within which she works. *Id.* ¶ 15.5(b). If the grievance is not resolved at "Step Two," the employee may move to "Step Three" by submitting her grievance to the Personnel Director, whose job duties were being performed by the Receiver at the time of the events leading to these lawsuits. *Id.* ¶ 15.5(c). *If the Receiver determines the matter is grievable under Board rules*, he will refer the grievance for a hearing by either a hearing officer or a grievance committee. *Id.* The aggrieved employee may appeal the decision of the hearing officer or grievance committee to the Board. *Id.* ¶ 15.5(c)(iv).

[19] Doc. no. 1071 in *United States v. Jefferson County*, Civil Action No. CV-75-S-666-S (N.D. Ala., Feb. 23, 2004), at 2 (emphasis in original). The relevant text of the Feb. 23, 2004 order reads as follows:

> Those classified employees who have completed the probationary period, and who are (or were) employed by the Personnel Board on the date of the adverse employment action that is the basis of a grievance, and who desire to appeal the determination of the Receiver that an action complained of is not subject to the

magistrate judge's decision, the matter would then be submitted to this court for review.

## I. BACKGROUND OF THE PRESENT CONTROVERSIES

The present actions all were presented to this court pursuant to the procedure outlined in the February 24, 2004 order. All plaintiffs in the actions addressed by this opinion are employees or former employees of the Personnel Board. Each was impacted by a reduction-in-force ("RIF") conducted by the Receiver after he "determined that certain positions at the Personnel Board were overstaffed and/or no longer necessary to fulfill the Personnel Board's mission."[20]   Each plaintiff subsequently filed a grievance challenging various aspects of the RIF.[21]   The Receiver determined that the grievances were not subject to the Board's grievance process.[22] Plaintiffs appealed the Receiver's decision, and the matters were assigned to

---

grievance procedure, shall notify the Receiver in writing, and file a copy with the Clerk of this Court, within ten (10) calendar days from the date of receipt of the Receiver's written determination. The Clerk shall draw at random a magistrate judge of the court, who shall conduct such proceedings as he deems necessary in order to determine whether the action complained of is or is not subject to the grievance procedure established by Rule 15 of the Rules and Regulations of the Personnel Board. The magistrate judge shall file a written report and recommendation *solely as to the issue of whether the matter is grievable.* Each party may file objections to the report and recommendation within ten (10) calendar days after they are entered, and this court shall thereafter enter such orders as may be appropriate. [Emphasis in original.]

[20] Doc. no. 28 in Civil Action No. MC-03-RRA-2162-S (Receiver's Brief), at 3.

[21] The claims of the plaintiffs are described in more detail *infra.*

[22] Receiver's Brief, at Exhibits 3-6.

Magistrate Judge Robert R. Armstrong.[23]

The terms of this court's February 23, 2004 order required Judge Armstrong to: (*i*) conduct whatever proceedings he deemed necessary in order to "determine whether the action complained of is or is not subject to the grievance procedure established by Rule 15 of the Rules and Regulations of the Personnel Board";[24] (*ii*) "file a written report and recommendation *solely as to the issue of whether the matter is grievable*";[25] (*iii*) allow the parties ten days to file objections to the report and recommendation; and, in the event of objection by any party, (*iv*) submit any objections to this court for final decision.[26]

After reviewing the parties' submissions and conducting a hearing, Judge Armstrong issued a report recommending that the Receiver's non-grievability decision be upheld, except *possibly* with regard to plaintiff Sandra Henry's claims concerning reassignment outside her class and reassignment with a punitive motive, and with regard to plaintiff Darryl Bowie's retaliation claim. The Receiver filed an objection to the magistrate's report and recommendation ("R & R"), stating that *all*

---

[23] Some of the plaintiff's claims originally were assigned to other magistrate judges, but the matters later were consolidated before Judge Armstrong. *See* doc. no. 23 in Civil Action No. MC-03-RRA-2612-S (order consolidating cases).

[24] Doc. no. 1071 in *United States v. Jefferson County*, Civil Action No. CV-75-S-666-S (N.D. Ala., Feb. 23, 2004), at 2; *see also supra* note 19.

[25] *Id.* (emphasis in original).

[26] *Id.*

aspects of *all* plaintiffs' claims should be excluded from the grievance process. Plaintiffs Joyce G. Smith and Barbara D. Carmichael objected to the complete exclusion of their claims from grievance, and Sandra Henry objected only to the portions of the R & R holding that certain of her claims were not grievable.  Darryl Bowie did not file an objection.  For the reasons stated below, the court concludes the magistrate's R & R should be adopted in part, and rejected in part.

## II. DISCUSSION

As clearly stated in this court's February 23, 2004 order,[27] the *only* issue to be decided at this stage is whether any plaintiff's claims are grievable.

## A.   Grievability of RIF's and RIF-Related Actions

Plaintiffs do not contest the Receiver's legal authority to institute a reduction-in-force ("RIF").  Instead, they assert that the Receiver failed to follow the procedures set forth in Rule 11.13 of the Personnel Board's Rules and Regulations when he conducted the RIF.[28]  The Receiver argues that claims related to a RIF are not subject to Personnel Board Rule 15, which defines the Board's grievance procedures.  His argument hinges on Rule 15.4, which provides that:

> *In no event* shall the following topics be admitted for adjustment under this Rule 15:

---

[27] *See supra* note 19.

[28] The full text of Rule 11 of the Rules and Regulations of the Personnel Board of Jefferson County is set out at Appendix III to this opinion.

a.     Matters dealing with Classification, pay, compensation, examination, leave, discipline, *and related actions specifically set forth in these rules*;

b.     Loss or absence of premium pay;

c.     Oral and/or written reprimand or an informal performance evaluation;

d.     Matters subject to appeal under Rule 12 of these Rules;

e.     Assignment-related matters such as changes in duties within Class, off-days, shift and vacation scheduling, except those assignments considered disciplinary. The mere allegation of assignment with a punitive motive shall not be sufficient to allow adjustment under this Rule.

f.     Matters relating to established departmental policy and rules, and accepted management practice that are applied consistently to all Classified Employees, and for which there exists no conflict with these Rules or the Act.[29]

The Supreme Court of Alabama has observed that the Personnel Board's grievance procedures are designed to "exclude all but day-to-day employee complaints that are more efficiently and economically handled extrajudicially." *City of Bessemer v. Personnel Board of Jefferson County,* 420 So. 2d 6, 8 (Ala. 1982).

The Receiver based his non-grievability decision on Rule 15.4(a), which excludes from the grievance process all "[m]atters dealing with Classification, pay, compensation, examination, leave, discipline, *and related actions specifically set*

---

[29] *See* Appendix II, ¶ 15.4 (emphasis supplied).

-13-

*forth in these rules*."

This court agrees with the Receiver's determination, because the procedure for conducting a RIF is "specifically set forth in" Board Rule 11.13,[30] and claims relating to actions taken by the Receiver to implement a RIF are excluded by the plain language of Rule 15.4(a). Plaintiffs' arguments to the contrary are unavailing.

Essentially, plaintiffs attempt to argue the merits of their respective grievances, asserting that the Receiver failed to follow procedure, or that his actions were arbitrary and capricious. However, the issues of whether the RIF was wrongful, or improperly conducted, are irrelevant to the grievability determination. Even if the RIF *was* wrongful, and even if the Receiver *did* fail to follow Rule 11.13, plaintiffs do not have the right to pursue a grievance, because no applicable rule or other legal authority provides that right. Neither Section 23 of the Enabling Act,[31] nor Rule 11.13,[32] provides a RIF'd employee with a right of appeal. Rule 15.4 unequivocally states that the matters set forth therein will, "in no event," be submitted to the grievance process. The fact that plaintiffs believe they have strong arguments on the merits of their claims does not allow them to escape the exclusion stated in Rule 15.4(a).

---

[30] *See* Appendix III, ¶ 11.13.

[31] *See* Appendix I.

[32] *See* Appendix III, ¶ 11.13.

Plaintiffs rely on the decision of the Alabama Court of Civil Appeals in

*Personnel Board of Jefferson County v. Bailey,* 475 So. 2d 863 (Ala. Civ. App. 1985),

in which a

> deputy sheriff in the Jefferson County Sheriff's Department, filed a
> grievance with the Jefferson County Personnel Board (Board)
> complaining that Sheriff Mel Bailey had transferred him from patrol
> duty to jail duty in the sheriff's department for disciplinary reasons.
> [The deputy] alleged in his complaint that he was disciplined because of
> a recent complaint filed by a citizen against him, which complaint was
> not sustained.
>
> The Board's personnel director ruled that [the deputy's] complaint
> was grievable.  Bailey did not appeal the director's ruling to the Board,
> although Board review of the ruling was available.  The grievance
> committee then heard the merits of [the deputy's] complaint and entered
> a ruling in [his] favor, ordering that [he] be reinstated to the patrol
> division.

*Id.* at 865.  The Sheriff challenged that determination in state circuit court, which

sustained the Personnel Director's conclusion that the deputy's complaint was

grievable, but ultimately issued a declaratory judgment holding that the decision of

the grievance committee was arbitrary and capricious.  On review of cross appeals

from the circuit court, the Alabama Court of Civil Appeals affirmed the Personnel

Director's and lower court's determinations that a transfer for disciplinary reasons

was a grievable issue.  The appellate court began by examining Personnel Board Rule

8.6, the grievance rule in effect at that time.  The pertinent part provided:

> (A) *DEFINITION OF GRIEVANCE.* A grievance is a wrong, real or fancied, considered by an employee as grounds for complaint. Matters dealing with classification, pay, compensation, examination, leave, discipline, *and related actions specifically set forth in the Personnel rules and regulations*, *shall not be considered under grievance procedures,* but shall be adjusted in accordance with the provisions set forth in these rules and regulations. *Any question as to what constitutes a grievance or what should be processed as a matter subject to these rules and regulations*, *shall be determined by the Director*, *subject to the review of the Board.*

*Id.* at 866 (quoting former Rule 8.6) (emphasis supplied). The Sheriff argued that the phrase "specifically set forth in the [Board's] Rules and Regulations" modified only "related actions." The Board, however, previously had interpreted the phrase as modifying all of the words that preceded it: *i.e.,* "classification," "pay," "compensation," "examination," "leave," and "discipline." "Thus, the Board concluded that rule 8.6 applied to [the deputy sheriff's] complaint since no other Board rule specifically dealt with *transfers for disciplinary reasons*." *Id.* (emphasis supplied). The Court of Civil Appeals accorded "substantial deference . . . to an agency's interpretation of its own rules and regulations," *id.* (citing *Hayes International Corp. v. McLucas*, 509 F.2d 247 (5th Cir. 1975)), and upheld the decision of the Personnel Director that the deputy's claim was grievable.

Here, in contrast to the circumstances presented in *Bailey*, there *is* a rule specifically dealing with the procedure for implementing a RIF: Rule 11.13, the full

text of which is set forth in Appendix III to this opinion.   Thus, *Bailey* is distinguishable on both its facts and holding, and actions related to a reduction-in-force are excluded from the grievance process by the plain language of Rule 15.4(a).

Plaintiffs offer two additional arguments that also are unavailing.  Joyce Smith and Barbara Carmichael assert that their claims are grievable because they allege a *disciplinary* RIF.  This argument is self-defeating, however, because Rule 15.4(a) excludes "[m]atters dealing with . . . discipline," and Board Rule 12 specifically addresses disciplinary issues.

Further, all plaintiffs assert that their claims are grievable because they have no other means of redress.  Despite the instinctive appeal of this policy argument, it does not assist plaintiffs to escape the exclusions stated in Rule 15.  As the Supreme Court of Alabama observed in *City of Bessemer*, *supra*, the Board's grievance rule was designed to "*exclude* all but day-to-day employee complaints that are more efficiently and economically handled *extrajudicially*."  420 So. 2d at 8 (emphasis supplied).  Thus, the State Supreme Court has recognized that some employees' claims will not be cognizable under the Board's grievance procedures.  Even so, these employees will only be left without an *administrative*, or "extrajudicial," means of redress.  Exclusion from the grievance process does not prevent an aggrieved employee from filing an appropriate civil action in state or federal court.

-17-

Finally, and most importantly, the three members of the current Personnel Board also have determined that actions taken in connection with a reduction-in-force are excluded from the grievance process.  On August 12, 2004, the Board reviewed the Receiver's determination of non-grievability in a matter involving several *non-Board employees* who all lost their jobs due to a RIF conducted pursuant to Personnel Board Rule 11.13.  The employees alleged that their terminations were wrongful and in violation of Board rules, including Rules 11.13 and 15.4(f).  After considering the parties' arguments, the Board issued the following decision:

> The Board finds that these lay-offs are not adjustable under the grievance rules.  Rule 15.4(a) states as follows:
>
> **MATTERS EXCLUDED FROM GRIEVANCE PROCEDURE**
>
> In no event shall the following topics be admitted for adjustment under this Rule 15:
>
> (a)    Matters dealing with classification, pay, compensation, examination, leave, discipline **and related actions specifically set forth in these rules are excluded from the grievance procedures.**
>
> As noted above, Rule 11.13 specifically provides for lay-offs by reductions in force.  Thus, the subject lay-offs are actions "specifically set forth by [the Board's] rules and are excluded from the grievance procedure."[33]

---

[33] Doc. no. 33 in Civil Action No. MC-03-RRA-2162-S (Receiver's supplemental reply), Exhibit 1, at 2 (emphasis in original).  Plaintiffs assert that Judge Armstrong should not have considered the Receiver's supplemental submission, including the Board ruling attached thereto, because it was filed approximately thirteen days after the deadline Judge Armstrong imposed for the

As the Alabama Court of Civil Appeals has stated, "substantial deference" should be given to the Personnel Director's interpretations of rules and regulations originally proposed by him, and approved by at least two of the three members of the Personnel Board. *Bailey,* 475 So. 2d at 866.[34]

Based on all of the foregoing, the court concludes that, in general, complaints about actions taken in connection with a reduction-in-force are excluded from the Rule 15 grievance process. Because the allegations by plaintiffs Joyce Smith and Barbara Carmichael relate generally to the RIF conducted by the Receiver, and because their grievability argument based on the alleged disciplinary nature of the RIF is unavailing,[35] the magistrate's report and recommendation will be adopted in

parties' submissions. The court is not persuaded by this argument, because Judge Armstrong has discretion to control his calendar, and to allow a late filing if he believes such to be beneficial. Further, there is no indication that plaintiffs suffered prejudice as a result of the Receiver's filing, or that they were deprived of the opportunity to respond. Indeed, the Receiver's submission was filed on August 26, 2004, and the Magistrate Judge's report and recommendation was not entered until the following month, on September 27, 2004.

Plaintiffs also assert that the Board's decision is not applicable to the present situation, because the grievants were non-Board employees. That fact is irrelevant, however, because the rules regarding grievability of a claim are the same for both Board employees and non-Board employees.

[34] *See* Act No. 248, 1945 Acts of Alabama, § 12, amended by Act No. 684, 1977 Acts of Alabama ("[The Personnel Director shall] [p]repare and submit to the board for its consideration and approval such forms, rules and regulations as are necessary to carry out the provisions of this subdivision including the rules governing examination, appointments, suspensions, dismissals, certification of eligibles, reductions in force, sick leave, leave of absence, resignation, reinstatements, promotions, demotions, transfers, salary adjustments, and any and all other rules and regulations necessary for administering a scientific and economical personnel system. Such rules and regulations must be approved by a two-thirds majority of the personnel board before becoming effective after which they shall have the force and effect of law unless they are contrary to the provisions of this subdivision.").

[35] *See* the discussion *supra,* at pages 15-17.

its entirety with regard to their claims.  Stated differently, the Receiver's decision that

the claims of Joyce G. Smith and Barbara D. Carmichael are not grievable will be

affirmed.

**B.      Sandra Henry, Timeliness, and Outside Reassignments With An Allegedly
        Punitive Motive**

Plaintiff Sandra Henry still is employed by the Board, as an "Examination and

Certification Specialist."  She filed her grievance on November 7, 2003,[36] and the

Magistrate Judge summarized her claims as follows:

> Sandra Henry held the job of administrative coordinator, the
> Board's highest clerical position . . . .  In October, 2002, the Receiver
> told Henry that he was reassigning her to the compensation and
> classification division to work with a five-year survey team and to lead
> the team's clerical position.  Henry was also assigned the pension board
> duties performed by an administrative II position employee.  Later,
> Henry was reassigned to the compensation and classification division
> where her desk was located with two administrative assistant II
> employees.  Henry was trained to perform [pension] board and
> administrative duties, and she was stripped of most of her administrative
> coordinator duties.  On May 14, 2003, Henry was advised that the
> Receiver had determined that the Board was no longer going to perform
> [pension] board duties.  On May 23, 2003, Henry was informed that the
> personnel board was making an effort to cross-train employees, and that
> she was being reassigned to the certification division for that purpose.

Henry states:

> During the 15 months of the Receiver's tenure,[37] he

---

[36] Doc. no. 26 in Civil Action No. MC-03-RRA-2162-S (Henry's Brief), at Exhibit A ("Step
I" grievance).

[37] The Receiver had served approximately fifteen months on the date Henry filed her

systematically restricted and altered plaintiff's duties with the series of reassignments described above. The process began with the Receiver's initial wrongful reassignment in October 2002 and was completed on October 31, 2003, when, without warning, the Receiver and the Deputy Director summoned plaintiff to a meeting in which they advised her that her position as Administrative Coordinator would be eliminated effective November 17, 2003, and her services were no longer needed by the Board. The Receiver's Notice of Position Elimination advised plaintiff that there was no vacant position in her Department in which she could be placed and no lower classification or grade in her Department which is affected by the RIF into which she could be placed.[38]

Henry claims that the Receiver violated Board Rules 11.10 and 11.12 in a series of assignments beginning in October 2002.[39] Henry's allegations encompass

---

grievance.

[38] Doc. no. 35 in Civil Action No. MC-03-RRA-2162-S (Report and Recommendation), at 4-5.

[39] The full text of Rule 11 is set forth in Appendix III to this opinion. Rule 11.10, governing reassignments, states:

> An Appointing Authority may at any time, upon written approval of the Director, assign a Classified Employee under his or her jurisdiction from one Position to another *in the same Class* regardless of the shift, location, hours of work, or other consideration as long as the work-week basis remains the same. Such transfers shall be made with the retention of all rights of seniority, vacation, sick leave, and overtime as the employee may have accrued.

Appendix III, ¶ 11.10 (emphasis supplied). Rule 11.12, governing assignments, states:

> Upon immediate notification to the Director, an Appointing Authority may assign any Classified Employee under its jurisdiction to any duties *so long as such duties are within the same Class.* No Classified Employee may be assigned duties of a different Class for a period in excess of thirty (30) consecutive days, or more than ninety (90) days in a twelve (12)-month period, without the approval of the Director. If a Classified Employee reasonably believes that an Appointing Authority has assigned him or her to a Position in a Class different from the one in which he

some claims arising out of assignments and reassignments which occurred prior to the RIF, and which did not arise out of the RIF. These claims, therefore, do not fall under the general exclusion of RIF-related allegations found in Rule 15.4(a). Nevertheless, Henry faces other hurdles in obtaining a finding of grievability.

First, Rule 15.4(e) excludes from the grievance process all "[a]ssignment-related matters *such as* changes in duties *within Class*, off-days, shift and vacation scheduling, *except those assignments considered disciplinary.*"[40] The mere fact that Henry complains of being reassigned *outside* her class does not prevent her claim from being excluded. Rule 15.4(e) excludes "assignment-related matters" generally. The words "such as" indicate that all examples following that phrase are stated by way of example only, and that the specific assignment-related matters stated in Rule 15.4 ("changes in duties within Class, off-days, shift and vacation scheduling") are not the only ones that will be excluded. Because plaintiff's allegations of wrongful assignment are "assignment-related matters," they are excluded by the plain language of Rule 15.4(e).

---

or she previously worked, the Classified Employee shall, within ten (10) days such assignment becomes effective, notify the Director in writing and request an investigation. The Director shall then notify the Classified Employee of the results of his or her investigation within ten (10) days.

*Id.*, ¶ 11.12 (emphasis supplied).

[40] Appendix II, ¶ 15.4(e) (emphasis supplied).

Henry nonetheless asserts that her claims should not be excluded by Rule 15.4(e), because she complains of assignments that were "disciplinary" in nature. Henry can succeed on this argument, however, only if she provides more than her own assertion.   Rule 15.4(e) specifically states that "[t]he mere allegation of assignment with a punitive motive shall not be sufficient to allow adjustment under this Rule."[41]   The Magistrate Judge concluded, without explanation, that Henry *has* set forth more than a "mere allegation" of punitive motive.   This court disagrees.

Henry *alleges* several times that her assignments were punitive in nature,[42] but she offers nothing to support her allegations.   She repeatedly asserts that the Receiver singled her out for reassignments, but she does not state that she was being singled out as punishment for anything she had done, or failed to do.   The language of Henry's grievance itself does not contain any reference to punitive reassignment. Henry states that the Receiver intentionally humiliated her, that he reassigned her and eventually eliminated her position in violation of Board rules, and that he acted arbitrarily and capriciously.   She does not, however, state that the Receiver acted with

---

[41] *Id.*, ¶ 15.4(e).

[42] *See, e.g.,* doc. no. 29 in Civil Action No. MC-03-RRA-2162-S (Henry's Reply Brief), at 5, n.3 ("Plaintiff made extensive factual statements to demonstrate the improper actions by the Receiver that cause this grievance to be adjustable."); doc. no. 26 in Civil Action No. MC-03-RRA-2162-S (Henry's Brief), at 14 ("The Receiver's actions were punitive in nature and were calculated to ultimately render plaintiff vulnerable to exactly what occurred, the elimination of her position and her involuntary demotion.").

a punitive motive. Because Henry offers only a "mere allegation of assignment with a punitive motive," her assignment-related claims are excluded from grievance by the plain language of Rule 15.4(e).

Further, even if Henry *had* offered proof of the disciplinary nature of her assignment-related claims, those claims still would not be grievable, because they were not submitted for grievance in a timely manner. Rule 11.12 states that when an employee desires to challenge an assignment outside class, she "shall, *within ten (10) days* [after] such assignment becomes effective, notify the Director in writing and request an investigation."[43] Rule 15.5 requires that a "[g]rievance, to be properly commenced, must be submitted to the grievant's immediate supervisor *within seven (7) calendar days of the incident giving rise to the grievance.*"[44] Henry complains of assignments that occurred between October 2002 and May 2003, but she did not file her initial, "Step I," grievance until November 7, 2003, several months later. Such a lengthy delay clearly places Henry's claims outside the time limitations of both Rule 11.12 and Rule 15.5.

Henry claims she failed to file a timely grievance only because she believed her reassignments were temporary. Judge Armstrong opined, based on this allegation,

---

[43] Appendix III, ¶ 11.12 (emphasis supplied).

[44] Appendix II, ¶ 15.5(a)(i) (emphasis supplied).

that there "*might be* a factual issue as to whether this complaint is time-barred."[45]  In addition to finding this indecisive statement unhelpful, the court disagrees with the Magistrate Judge's conclusion.  Henry cites no authority to support her position, and the court can find no authority for the position in the Board's rules.  Thus, Henry could have filed a timely grievance for any one of the assignments that occurred between October 2002 and May 2003.  Because she failed to do so, the assignment-related allegations in her grievance should be excluded as untimely.[46]

In summary, Sandra Henry's RIF-related allegations are excluded from the grievance process by Rule 15.4(a).  Her assignment-related allegations are excluded by Rule 15.4(e), because she failed to present more than a mere allegation of assignment with a punitive motive.  Even if Henry had demonstrated a punitive assignment, however, her assignment-related allegations still would be excluded because they were not timely filed.[47]

---

[45] Doc. no. 35 in Civil Action No. MC-03-RRA-2162-S (Report & Recommendation), at 8-9 (emphasis supplied).

[46] Henry apparently alleges that her 2002-2003 reassignments were steps in the Receiver's calculated plan to ultimately terminate her position in a RIF.  To the extent Henry planned to use her assignment-related allegations as background evidence to support her wrongful-RIF claim, those allegations would not be time-barred.  Those allegations still are not helpful to plaintiff, however, because her RIF-related claims are barred by Rule 15.4(a).

[47] Henry also asserts her claims are grievable because they do not fall within Rule 15.4(f), which excludes "[m]atters relating to established departmental policy and rules, and accepted management practice that are applied consistently to all Classified Employees, and for which there exists no conflict with these Rules or the Act."  Appendix II, ¶ 15.(f).  Henry claims that the Receiver did not apply the RIF procedures consistently, and that his actions do conflict with the Enabling Act and Board's Rules.  Even if Henry's claims *do* fall outside Rule 15.4(f), however, they still are not

## C.    Darryl Bowie and Retaliation

Plaintiff Darryl Bowie commenced two civil actions in this court:  MC-03-RRA-2162-S ("Bowie I") and MC-03-RRA-3223-S ("Bowie II").  The Receiver summarized the procedural history of Bowie's claims in the following manner:[48]

> Since May 21, 2003, Mr. Bowie had been serving as the Testing Administration Specialist.  On July 15, 2003, Mr. Bowie met with his supervisor Lorren Oliver, Deputy Director of the Personnel Board. During this meeting Mr. Oliver advised Mr. Bowie that his performance needed to improve.  A copy of the record of verbal warning was given to Bowie that day.

> On July 16, 2003, Mr. Bowie submitted an e-mail communication to the Receiver in which he requested to "appeal" the July 15, 2003, verbal warning, which Mr. Bowie described as a "performance review," and on July 18, 2003, Mr. Bowie filed a grievance to address alleged "humiliation, adverse conditions, and hostile environment."

> On July 24, 2003, the Receiver advised Mr. Bowie that his request for an appeal was denied, on the basis that the record of verbal warning was not a performance appraisal that could be appealed under Rule 14.4 of the Rules and Regulations of the Personnel Board of Jefferson County.  The Receiver further advised Mr. Bowie that the matters presented in his grievance were not subject to adjustment under Rule 15 of the Rules and Regulations of the Personnel Board of Jefferson County.  The Receiver advised Mr. Bowie that he would continue to review the situation and invited Mr. Bowie to submit additional information in writing by August 1, 2003.

---

grievable, because they are covered by other exclusionary provisions of Rule 15.4.  As the Receiver points out, only one of the subdivisions of Rule 15.4 must be satisfied for the matter to be excluded from the grievance process.  Because Henry's claims are excluded by Rule 15.4(a) and Rule 15.4(e), they would not be "saved" even if they did fall outside Rule 15.4(f).

[48] The court finds the Receiver's summary to be complete and accurately based on the record.

Over the next several days, Mr. Bowie submitted several additional documents, including an "appeal addendum" and two amendments to his grievance.  On July 31, 2003, the Receiver responded to Mr. Bowie's filings.  The Receiver reiterated his position that the matters presented were not adjustable under Rule 14 or 15 of the Rules and Regulations of the Personnel Board of Jefferson County.  The Receiver again encouraged Mr. Bowie to submit in writing by August 1, 2003, any additional information he wished the Receiver to consider.

On August 5, 2003, Mr. Bowie filed a "request to appeal" in this Court.  This filing has been assigned the case number CV-03-RRA-2162-S and has been referred to as <u>Bowie I</u>.  On September 3, 2003, the Receiver returned Mr. Bowie to the position of Performance Assessment Specialist and agreed to remove the written record of the verbal warning from Mr. Bowie's personnel file.

. . . .

On October 31, 2003, the Receiver advised Mr. Bowie that his position of Performance Assessment Specialist was being eliminated.  As noted above, the Receiver allowed Mr. Bowie until November 13, 2003 to submit any additional information that he wished him to consider.

On November 7, 2003, Mr. Bowie filed an "Amendment to Grievance" in <u>Bowie I</u>.  In this "Amendment to Grievance," Mr. Bowie asks the Court to, among other things, "[r]eturn the grievant to his position" and require the Receiver to "act in accordance with Jefferson County Board Rules and Regulations with regard to reduction in force." . . .

On December 3, 2003, Mr. Bowie filed a separate action in this Court titled "Appeal of Receiver's/Director's decision."  This filing was assigned the case number CV-03-HGD-3223-S and has been referred to as <u>Bowie II</u>.  In this filing, Mr. Bowie asserts that he is invoking Rule 4.5 of the Rules and Regulations and "the Order creating the Receiver."  Mr. Bowie specifically asks the Court to "[o]verturn the Receiver's

-27-

decision regarding the reduction in force."[49]

Bowie asserts that the elimination of his position in the reduction-in-force conducted by the Receiver was in retaliation for his earlier grievance.

The Magistrate Judge found that all of Bowie's allegations, except for his retaliatory RIF claim, were excluded from the grievance process. The Receiver objected to the Magistrate Judge's R & R, asserting that *all* of Bowie's claims, including his retaliatory RIF claim, should be excluded from grievance. Bowie did not object to the R & R. Therefore, the only question to be discussed is whether Bowie's allegations of a retaliatory RIF are subject to grievance.

Board Rule 15.2 states that "[a]ny act of retaliation committed against a Regular Employee for having filed a grievance shall be eligible for adjustment under this Rule."[50] Further, Rule 15.5 states that "[g]rievants are assured of freedom from restraint, interference, discrimination or reprisal for presenting a grievance."[51] Bowie argues that these rules allow him to pursue his retaliation claims, even though they arise out of a RIF and, therefore, the claims ordinarily would be excluded by Rule 15.4(a). The Magistrate Judge agreed with Bowie, relying in part on the *Bailey*

---

[49]Doc. no. 28 in Civil Action No. MC-03-RRA-2162-S (Receiver's Brief), at 16-18 (bracketed alterations in original) (citations and footnotes omitted).

[50] *See* Appendix II, ¶ 15.2.

[51] *Id.*, ¶ 15.5.

decision from the Alabama Court of Civil Appeals, and recommended that Bowie be allowed to submit his retaliatory RIF claim for grievance.

The Receiver acknowledges that "allegations of retaliation for filing a grievance are generally adjustable under Rule 15."[52]   Nonetheless, the Receiver asserts that allowing *RIF-related* retaliation claims to be submitted for grievance would fail "to appreciate the full effect of Rule 15.4."[53]   The Receiver emphasizes the prefatory sentence of Rule 15.4, which states that: "*In no event* shall the following *topics* [including RIFs, which are excluded by subsection (a)] be admitted for adjustment under this Rule."[54]   The Receiver asserts this language excludes the "topic" of RIFs altogether, regardless of whether the RIF allegation has a retaliation component.

The court agrees with the Receiver, and finds Bowie's reliance on the *Bailey* decision unavailing.  In *Bailey,* the Alabama Court of Civil Appeals held that the grievant's complaint of a disciplinary transfer was subject to the Board's grievance process, even though there were separate Board rules dealing with both discipline and transfers, because the specific topic of *disciplinary transfers* was not covered by any

---

[52] Doc. no. 28 in Civil Action No. MC-03-RRA-2162-S (Receiver's Brief), at 18.

[53] *Id.*

[54] *See* Appendix II, ¶ 15.4 (emphasis supplied).

other Board rule.  *See Bailey,* 475 So. 2d at 866.[55]

A cursory reading of *Bailey* would seem to support the argument that, because the discrete topic of *retaliatory RIF's* is not specifically discussed in any other Board rule, they too fall outside the exclusion set forth in Rule 15.4(a).  This court concludes, however, that there are important distinctions between this case and the situation encountered in *Bailey.*  As the Receiver points out, the *Bailey* court accorded "substantial deference" to the Personnel Director's interpretation of the rules, and, determination that the grievance rule "applied to [the claimant's] complaint since no other Board rule specifically dealt with transfers for disciplinary reasons."  *Id.*  In this case, however, both the Receiver (standing in the shoes of the Personnel Director) and the three members of the current Personnel Board have separately determined that RIF-related allegations are *not* grievable.  Even though the Board's decision did not specifically state that *retaliatory* RIFs are not grievable, the Receiver, who was exercising the authority of the three-member Board at the time of these filings, interprets Rule 15 as excluding even retaliatory RIF allegations.

Further, as the Receiver points out, the Board easily could have added limiting

---

[55] The *Bailey* court sustained the Personnel Director's determination that the deputy sheriff's grievance was grievable under the Board's Rules and Regulations, and relied on the predecessor to Rule 15, which stated that:  "Matters dealing with classification, pay, compensation, examination, leave, discipline, and related actions specifically set forth in the Personnel rules and regulations, shall not be considered under grievance procedures."  475 So. 2d at 866.

language to Rule 15.4(a) if it intended all retaliation-related allegations to be grievable, even if they ordinarily would be excluded from grievance by another subdivision of the rule.  Indeed, the Board did add such limiting language to Rule 15.4(e), excluding all "assignment-related matters . . . *except those assignments considered disciplinary.*"[56]  The absence of similar language in subdivision (a) indicates that the Board did not intend for there to be an exception to the exclusionary rule for retaliatory matters covered by other provisions of the Board's rules.  Further, a holding that *any* claim involving a retaliation allegation is grievable would allow *any* claimant to grieve *any* claim, regardless of whether the claim is otherwise excluded by the Board's rules, simply by adding an allegation of retaliation.

In summary, all of Darryl Bowie's claims, including his retaliation allegations, are excluded from the grievance process by Rule 15.4.

### III. CONCLUSION AND ORDERS

In accordance with the foregoing, this court adopts that portion of the Report and Recommendation ("R & R") of Magistrate Judge Robert R. Armstrong recommending that this court hold that the claims of plaintiffs Joyce G. Smith and Barbara D. Carmichael are not subject to the Personnel Board's grievance process. The decision of the Receiver that none of the claims asserted by Smith or Carmichael

---

[56] *See* Appendix II, ¶ 15.4(e) (emphasis supplied).

are grievable is sustained.

The court rejects that portion of the R & R recommending that certain of plaintiff Sandra Henry's claims are subject to the Personnel Board's grievance process, and otherwise adopts the R & R with regard to Henry.  The decision of the Receiver that none of Henry's claims are grievable is sustained.

The court rejects that portion of the R & R recommending that certain of plaintiff Darryl Bowie's claims are subject to the Personnel Board's grievance process, and otherwise adopts the R & R with regard to Bowie.  The decision of the Receiver that none of Bowie's claims are grievable is sustained.

DONE and ORDERED this 8th day of November, 2005.


_____
United States District Judge

# APPENDIX I
## Section 23 of the Personnel Board's Enabling Act[57]

**Reduction in force.** Whenever it is necessary because of lack of work, lack of funds or whenever it is advisable in the interest of economy to reduce the staff of any department or agency of the counties, or any municipality affected by this Act, the appointing authorities shall lay off employees according to the procedure set forth in this Act and the rules and regulations prescribed thereunder. The duties performed by the employee or employees so laid off may be assigned to any other permanent civil service employee or employees in the department or office, who, in the opinion of the director of personnel, are qualified to perform such duties regardless of the specific classification or grade to which such employees are allocated. Lay offs shall be made by laying off the employee in the classification to be affected by the lay off who last attained such classification or grade, and so on in succession. In case there are two or more who would be affected by a lay off, and who have an equal rating as to seniority, the employee who stands lowest according to the efficiency records kept by the director of personnel shall be laid off. When an employee is laid off in a department which has other classifications or grades lower than the classification or grade from which he, or she, is laid off, he, or she, shall have the option of working in any other lower classification or grade in the same department, provided the director of personnel finds that he, or she, is qualified to perform the duties of such lower classification or grade, such option being subject, however, to the following limitation. Where an employee so laid off elects to drop to a lower classification or grade, and where the appointing authority reduces the number of employees in such lower classification or grade, the reduction shall be made in the manner in which it is herein provided lay offs shall be made, except that such reduction shall in no case cause the lay off of any permanent employee in such lower classification or grade who has more seniority in the department than the employee laid off from the higher classification or grade. A person laid off from a classification or grade shall have the right, so long as he, or she, is in the service or on the lay off list to return to the position from which he, or she, is laid off, in the event such position is refilled. The names of employees laid off as provided herein shall be placed upon the department lay off list for such position as in the opinion of the director of personnel the employees are qualified and entitled to hold, including any positions which may be thereafter created in the department. The order of the names on the lay off list shall

---

[57] Act No. 248, 1945 Acts of Alabama, § 23.

be in the relative order of seniority; provided, however, that where there are two or more employees who are equal in seniority they shall stand on the lay off list in the order of their efficiency records kept by the director of personnel. All permanent employees in the classified service compensated on a monthly basis who are to be laid off are to be given fifteen days' notice of such lay off prior to the effective date thereof.

## APPENDIX II
## Rule 15 of the Personnel Board's Rules and Regulations
## ("Grievances")

**15.1   DEFINITION**

A grievance is a complaint by a Regular Employee or his or her representative alleging that action taken by a co-employee, supervisor or other person acting on behalf of the Regular Employee's Appointing Authority, substantially affected a term or condition of the Regular Employee's employment with an Appointing Authority. It shall be the burden of the employee to provide sufficient proof of any allegations made against management. Such proof need only be presented in summary or outline form within the statements made on the grievance forms and shall not require submission of documentation in the form of affidavits or other legal documents.

**15.2   REQUIREMENTS FOR GRIEVANCE**

In order to be adjusted under the provisions set forth in this Rule, a grievance shall cite the details (such as dates, locations, times of day, witnesses, etc.) concerning a particular incident(s) with sufficient specificity to enable the Appointing Authority to prepare an adequate response. Any act of retaliation committed against a Regular Employee for having filed a grievance shall be eligible for adjustment under this Rule.

**15.3   SCOPE OF GRIEVANCE**

The Director shall determine what constitutes a grievance adjustable under this Rule.  The Director shall notify the grievant in writing of his or her decision.  Either party to the grievance may appeal the Director's determination to the Board within ten (10) calendar days from date of receipt.

**15.4   MATTERS EXCLUDED FROM GRIEVANCE PROCEDURE**

In no event shall the following topics be admitted for adjustment under this Rule 15:

**a.**   Matters dealing with Classification, pay, compensation, examination, leave, discipline, and related actions specifically set forth in these Rules;

**b.**   Loss or absence of premium pay;

    **c.**    Oral and/or written reprimand or an informal performance evaluation;

    **d.**    Matters subject to appeal under Rule 12 of these Rules [pertaining to "Disciplinary Actions and Appeals"];

    **e.**    Assignment-related matters such as changes in duties within Class, off-days, shift and vacation scheduling, except those assignments considered disciplinary. The mere allegation of assignment with a punitive motive shall not be sufficient to allow adjustment under this Rule.

    **f.**    Matters relating to established departmental policy and rules, and accepted management practice that are applied consistently to all Classified Employees, and for which there exists no conflict with these Rules or the Act.

## 15.5   GRIEVANCE PROCEDURE

Grievants are assured of freedom from restraint, interference, discrimination or reprisal for presenting a grievance. Counsel or other persons of his or her choosing through the grievance process may represent the grievant through the grievance process. The Grievance shall be conducted according to the following process:

**a.**    **Step One**:

    **i**    The Grievance, to be properly commenced, must be submitted to the grievant's immediate supervisor within seven (7) calendar days of the incident giving rise to the grievance.  A copy of the grievance must be filed with the Employee Relations Section of the Board.  All such complaints shall cite with specificity the reason and nature of the complaint.

    **ii.**    Within seven (7) calendar days of receipt of the grievance, the grievant's immediate supervisor shall reply to the grievant in writing in a form approved by the Director.  A copy of his or her reply shall be furnished to the Employee Relations Section of the Board.

    **iii.**    In lieu of replying, the grievant's immediate supervisor may elect to refer the complaint to his or her immediate superior within the time period of his or her reply, and must acknowledge receipt of the grievance in writing to the grievant no later than the next business day after receipt of the referred grievance.  Failure to

reply shall result in submission of the grievance to Step Two.

   **iv.** Should the supervisor and/or his or her immediate superior not return an answer on official forms within the established time limits, the grievant may proceed to the next step within the time limit outlined below.

  **b.** **Step Two**:

If the grievant is not satisfied with Step One, the grievant may submit, within five (5) days of the answer or its due date, whichever occurs first, the grievance to the department head in which he or she works.  Such departmental head shall reply to the grievant within five (5) days of receipt or referral of the grievance in writing.  A copy of the reply by the department head shall be furnished to the Employee Relations Section of the Board.

  **c.** **Step Three**:

  **i.** If unresolved by the department head's answer, the grievant may submit the grievance to the Director on official forms, signed by the grievant, within five (5) calendar days of the Step II answer or its due date to one of the two procedures outlined below at the grievant's choice:

    **a)** **Option One**:  A Hearing Officer, next in order from a list of such local attorneys who serve as Hearing Officers for other appeal cases before the Board, provided that the Hearing Officer is willing and available to serve in this capacity.

    **b)** **Option Two**:  A grievance committee shall be composed of three members.  One member shall either be the Citizens Supervisory Commission representative for the County employees if the grievant is employed by the County, or in all other cases the Citizens Supervisory Commission representative for the municipal employees.  The Appointing Authority of the jurisdiction shall designate one member where the grievant is employed. The Appointing Authority's designation shall be made within seven (7) calendar days from the date on the letter notifying the Appointing Authority that the grievance has been set for a hearing.  The third member shall be a mutually agreed upon person selected by the first two members.  The third member shall be selected within seven (7) calendar days from the date of the letter designating the Appointing Authority's member.  The third mutually

selected member shall serve as chair of the committee. In the event one or more members fail to assume office, the Director shall designate said member(s).

**ii.    Hearing Procedures For Hearing Officer**. The Hearing Officer shall convene a formal hearing within ten (10) days after selection. After a formal hearing, the Hearing Officer shall render findings of fact and a recommendation to the Board within ten (10) calendar days of the completion of taking testimony and evidence. The Board shall render a decision at its next occurring regular Board meeting.

**iii.    Hearing Procedures For Grievance Committee**. The grievance committee shall convene a formal hearing within fifteen (15) days after selection and the grievance is received. After a formal hearing, the committee shall render a finding of fact and a decision concerning the grievance within ten (10) days of the completion of taking testimony and evidence. The decision shall be by simple majority. In the event the Committee's decision is less than unanimous, a dissenting opinion shall be prepared.

**iv.    Appeals**. Either party may appeal the [Hearing Officer's or the] committee's decision to the [three members of the Personnel] Board within ten (10) days of the announced decision, at which time the Board shall review the record and render a final decision at the next regular Board meeting.

## 15.6   RELATED PROVISIONS

**a.**    The Director shall provide such administrative services as may be necessary and shall exercise his authority to require the production of records or appearance of witnesses as may be required to carry out the provisions of this Rule 15.

**b.**    Nothing within the content of this Rule 15 shall be so construed as to limit an Appointing Authority's right to manage its affairs and governmental operations or to infringe on its right and responsibilities to appropriate funds and to fix budgets for the proper expenditure of public funds.

**c.**    Failure of the grievant to take the complaint to Step II or III within the established time limit shall be deemed to mean that the grievance has been resolved.

# APPENDIX III
## Rule 11 of the Personnel Board's Rules and Regulations
### ("Appointments, Promotions, Demotions, Transfers, and Assignments")

## 11.1   REQUISITION FOR VACANT POSITION

Any Appointing Authority desiring to fill a vacant Position, shall submit a written request to the Director.  The request shall provide, at a minimum, a statement of the duties that the Position performs and any additional information known about the Position.

## 11.2   PREPARATION OF CERTIFICATION LISTS

**a**.   The Director shall review a requisition under Rule 11.1 and prepare a Certification list within a reasonable period of time.

**b.**   The Appointing Authority may make an appointment from the Certification list or, in accordance with Rule 9.5, request disqualification of one or more individuals.  Individuals who are currently employed in any jurisdiction within the Classified Service may not be appointed to a Position in another jurisdiction unless the existing employment is ended.

**c.**   The Appointing Authority then has ten (10) days from issuance of the Certification list to make an appointment or provide the Director with written notification that the requisition has been withdrawn and the reasons for the withdrawal.  Within ten (10) days after an appointment is made, the Appointing Authority shall provide the Director, in writing, a statement of reasons for the selection.

## 11.3   TYPES OF APPOINTMENTS

Unless explicitly provided for in these Rules, all Appointments to the Classified Service shall be from an Eligibility List and shall be one (1) of the following types:

**a.**   **Full-time Appointment.**  Appointment to a Full-time Position that requires or is likely to require, uninterrupted employment for a period of more than six (6) months. Candidates for appointment shall meet the requirements set by the Director.

     **b.**     **Part-Time Appointment.** These appointments may be granted for work that requires the service of an employee for less than the number of hours of a Full-time Appointment. Candidates for part-time appointment shall meet the requirements set by the Director.

     **c.**     **Provisional Appointment.** In the absence of an appropriate Eligibility List, the Board may authorize, by unanimous approval (i.e., all three (3) members), the filling of a vacancy by provisional appointment. Any such candidate for provisional appointment must meet all education, experience and related requirements set forth by the Director. Provisional appointments shall be for a period of not more than four (4) months, and no provisional appointment shall be continued for more than ten (10) days after the establishment of any Eligibility List for the class. Any provisional appointee who fails to qualify by competitive examination shall be removed from the provisional appointment after the appropriate Eligibility List is certified. The provisional appointment of any individual shall not confer on the appointee any rights of status, appeal or related rights set forth under these Rules.

     **d.**     **Seasonal Appointments.** These appointments may be granted for work seasonal in nature. No such appointment shall extend beyond four (4) months or the work season in question. All candidates to be considered for seasonal appointments shall meet the requirements set by the Director.

     **e.**     **Students or Interns.** Student appointments have the purpose of affording students of public administration and other professional areas an opportunity to gain actual work experience in the public service. Such appointments are viewed as intermittent employment for a definite period of time, not to exceed six (6) months of Full-time work in any twelve (12) month period. Candidates for appointment as students or interns shall meet the requirements set by the Director.

     **f.**     **Temporary Appointments.** Temporary appointments may be granted in extenuating circumstances, not to exceed six (6) months in duration. Candidates for temporary appointments shall meet the requirements recommended by the Director and approved by the Board.

     **g.**     **Emergency Appointments.** Upon receipt of request from an Appointing Authority citing emergency condition(s), the Director may authorize an emergency appointment not to exceed thirty (30) days. The manner of appointment

and rate of compensation shall be set by the Director.  An emergency as used herein means an unforeseen condition which is likely to cause loss of life, loss or damage to property, the stoppage of service or serious inconvenience to the public. Candidates for emergency appointments shall meet the requirements recommended by the Director and approved by the Board.

**h.    Federally Funded Positions.** Positions created in the Classified Service through any federally financed public employment program convey no rights of tenure or permanency.  Employment made available pursuant to such statutes shall terminate at cessation of such federal funding.  If an Appointing Authority accepts and utilizes federal funds for the creation of public employment opportunities, Classified Employees occupying such Positions, when budgeted on a full time basis for twelve (12) months, shall be entitled to earn and use sick and vacation leave upon the satisfactory completion of twelve (12) months of continuing employment. Should the applicable federal regulations controlling the use of such funds prescribe unusual or exceptional prerequisites for employment in said program, the Director, subject to approval of the Board, may prescribe the manner in which the Position shall be filled and related conditions of employment.

**i.    Wartime Appointments.**    During a war or emergency period, the Director, with the Board's approval, may authorize temporary appointments to Positions for which there are no appropriate Eligibility Lists.  Such appointments shall not confer any status or seniority in the Classified Service for any rights under these Rules to persons so appointed.  Such appointments shall not continue for a period longer than the duration of the war or emergency period plus six (6) months. A Classified Employee appointed to a higher classification pursuant to this rule shall not obtain any rights or claims to the higher classification but shall retain all rights previously accrued, so seniority shall accrue as if the wartime appointment had not occurred.  Candidates for wartime appointments shall meet the requirements set by the Director.

**j.    Other Types Of Appointments Made Permanent.**    An Eligible Candidate who has been temporarily appointed to a seasonal or part-time Position from an Eligibility List and who at the time of said appointment was a ranking Eligible Candidate at the time of Certification, willing to accept the appointment under the conditions and for the period stated, may be permanently appointed to said Position irrespective of the number of higher ranking Eligible Candidates available

for permanent appointment.  Such appointment can be made only when:

   i. The Position is a newly created Position and the fact that the said Position would become permanent was not known to the Appointing Authority at the time the temporary, part-time, or seasonal appointment was made;

   ii. The incumbent has worked the stipulated time period for which initial appointment was made; and

   iii. All permanent appointments arising out of the foregoing provision must be recommended by the Director and approved by the Board.

## 11.4 USE OF INDEPENDENT CONTRACTORS

  **a.** **Prohibition on Use of Independent Contractors.**  No Appointing Authority shall retain the services of an Independent Contractor except as provided in this Rule 11.4.

  **b.** **Request.**  Prior to retaining the services of an Independent Contractor, an Appointing Authority shall submit a written request to the Director, along with a copy of any proposed contract(s) or general description of the services to be provided by the Independent Contractor, along with a detailed description as to why the services of the Independent Contractor are necessary.  Upon receipt of the request, the Director shall forward the request to the Board for its approval.  The Board may grant such request with or without conditions, restrictions, or limitations.  The Board shall consider the following factors in reaching its decision on any request made by Appointing Authority:

   i. Whether competent persons are available for appointment under the Act or these Rules for performance of the type of work performed, or to be performed, by the Independent Contractor at issue;

   ii. Whether the type of work at issue is such as may reasonably be expected to be continuous for an indefinite time, or whether it is recurrent or sporadic in nature;

   iii. Whether the work performed, or to be performed, is customarily and generally given to Independent Contractors; and

iv.    Whether the Appointing Authority at issue has the physical facilities to perform the work for which the Independent Contractor is to be retained.

c.    **Definition.**    For purposes of this Rule 11.4, the term "Independent Contractor" shall mean any person or business entity, not appointed in accordance with these Rules or the Act.  The term "Independent Contractor," shall not include any person or business entity retained by an Appointing Authority for the construction of viaducts, bridges, street improvements, sewers, canals, public buildings, or public utilities.

## 11.5   DOCUMENTATION OF APPOINTMENTS

Personnel action forms relating to any and all employment matters requiring special action and/or approval by the Director and/or the Board under these rules shall be received prior to the effective date of the action in order to assure that there is ample time for review to determine the correctness of the action.  Personnel action forms relating to all appointments recognized in these Rules shall be submitted and received in the offices of the Board no later than the pay period following the effective date of the action.

## 11.6   PROBATIONARY STATUS OF APPOINTMENTS

a.    **General Rule.**    Any employment in a Position, whether through an initial appointment or Promotion, shall be subject to the completion of a satisfactory Probationary Period.

b.    **Following Initial Appointment.**    A Classified Employee in his or her Probationary Period following an initial appointment may be dismissed, demoted, or suspended for more than five (5) days without the right to grieve under Rule 15 or appeal or under Rule 12.

c.    **Following Promotion.**    A Classified Employee who is demoted during the Probationary Period immediately following his or her promotion shall have the option of returning to the Position held prior to the promotion, if still vacant.  If the Position is filled, the Director shall determine the manner in which the employee shall be retained in the Classified Service, being closely guided by the provisions in these Rules governing layoffs and reductions in force.  The demoted employee shall have the further option of electing to separate from the Classified Service and to have his or her name retained on the layoff list for the Position for a period not to exceed two

(2) years.

## 11.7  PROMOTIONS
Vacancies in Positions above the lowest rank in any category in the Classified Service shall be filled as far as practicable by the Promotion of employees in the Classified Service.

## 11.8  DEMOTIONS
An employee may be demoted for any of the following reasons:

a.      When an employee would otherwise be laid off because his or her Position is being abolished, re-classified to a higher grade or a lower grade; lack of work; lack of funds; or because of the return to work from an authorized leave of another employee to such a Position in accordance with the Rules on leave;

b.      When an employee does not possess the necessary qualifications to render satisfactory service in the Position he or she holds;

c.      When an employee is removed during probation;

d.      When an employee voluntarily requests such demotion; or

e.      When an employee is demoted for disciplinary reasons or for cause.

All demotions must receive the approval of the Director and the Appointing Authority.  If the employee is demoted against his or her will (other than during a probationary period), he or she may appeal to the Board as provided in Rule 12.

## 11.9  INTERGOVERNMENTAL CAREER TRANSFERS
Any person holding permanent status in the State of Alabama Merit System, or holding similar status in the civil service of the federal government, may be appointed without examination to a Position in the same or a similar Class in the Classified Service, provided that any such appointment shall be recommended by the Director and approved by the Board. Individuals making career transfers to jurisdictions under the supervision of the Board shall be afforded all seniority and sick leave accrued with the government prior to the transfer.  The Appointing Authority may elect to recognize vacation leave accrued with the government prior

to the transfer.  Employees transferred under this Rule enter the Classified Service as Regular Employees.

## 11.10 RE-ASSIGNMENT

An Appointing Authority may at any time, upon written approval of the Director, assign a Classified Employee under his or her jurisdiction from one Position to another in the same Class regardless of the shift, location, hours of work, or other consideration as long as the work-week basis remains the same.  Such transfers shall be made with the retention of all rights of seniority, vacation, sick leave, and overtime as the employee may have accrued.

## 11.11 TRANSFERS

The Director may, in the circumstances described in this Rule, authorize the transfer of a Regular Employee to another Appointing Authority, provided both Appointing Authorities consent.  Transfers may be authorized where: (1) an employee seeks transfer in the same class; (2) an employee seeks transfer from one class to another class for which the employee is on the Eligibility List for the class into which the employee seeks to be transferred, provided that such transfer would not constitute a Promotion as defined in these Rules; or (3) an employee seeks transfer from one class to a class previously held by the employee.   Prior to the consent of the Appointing Authorities, and as a condition precedent to authorization by the Director, the Appointing Authority that desires the prospective transferee must submit to the Director a written requisition under Rule 11.1.  The Director shall then certify the names of Eligible Candidates and the transferee to such Appointing Authority in accordance with Rule 10.  All transfers must be consistent with this Rule and the objectives and purposes of the Act.  Individuals who are currently employed in any jurisdiction within the Classified Service may not be appointed to a Position with another Appointing Authority unless the existing employment is ended.   The Appointing Authority who receives the transferee may elect to recognize vacation leave accrued with the prior Appointing Authority.  The transferee shall retain all sick leave and seniority within the Classified Service.

## 11.12 ASSIGNMENTS

Upon immediate notification to the Director, an Appointing Authority may assign any Classified Employee under its jurisdiction to any duties so long as such duties are within the same Class.  No Classified Employee may be assigned duties of a different Class for a period in excess of thirty (30) consecutive days, or more than

ninety (90) days in a twelve (12)-month period, without the approval of the Director. If a Classified Employee reasonably believes that an Appointing Authority has assigned him or her to a Position in a Class different from the one in which he or she previously worked, the Classified Employee shall, within ten (10) days such assignment becomes effective, notify the Director in writing and request an investigation. The Director shall then notify the Classified Employee of the results of his or her investigation within ten (10) days.

## 11.13 REDUCTION IN FORCE

If it becomes necessary to reduce staff, the following procedure shall govern the layoff:

a.     The reason for such reduction in force shall be reported in writing and shall identify the number and classes affected.

b.     The Director shall determine in consultation with the Appointing Authorities the organizational units to be affected by the layoff.

c.     If such reduction is departmental, then the reduction in force shall be made by laying off the employee(s) in the classification(s) to be affected in the following order: provisional, temporary, seasonal, part-time, probationary, and Regular Employees on the basis of their relative seniority. If there are two (2) or more Classified Employees who would be affected by the layoff, and have equal seniority, the Classified Employee who stands lowest on the efficiency or performance ratings last regularly filed with the Director, shall be laid off first.

d.     If such reduction is of a general nature, and/or throughout the Appointing Authority, the Director, after consultation with the Appointing Authority, shall determine the manner of layoff, taking into consideration the number and Classes of Positions to be reduced. In all instances, seniority shall govern except in the cases of two or more Classified Employees having equal seniority; in this event, efficiency or performance ratings shall be applied as provided in subsection (c) of this Rule.

e.     When an employee is laid off in a department which has other Classes or Pay Grades lower than the Class or Pay Grade from which he or she is laid off, the employee shall have the option of working in any other lower Class or Pay Grade in

the same Department, provided the Director finds that he or she is qualified to perform the duties of such lower Class or Pay Grade, such option being subject, however, to subsections (f), (g), and (h) following.

f.      Should the Appointing Authority reduce the number of Classified Employees in the Class or Pay Grade into which a Classified Employee moves under Rule 11.13(e), the reduction shall be made consistent with Rule 11.13, except that the movement of an employee under Rule 11.13(e) shall not result in the layoff of any Regular Employee with more seniority in the department.

g.      The duties performed by the Classified Employee or Employees so laid off may be assigned to any other Regular Employee or Employees in the department or office who, in the opinion of the Director, are qualified to perform such duties regardless of the specific Class or Pay Grade to which such Classified Employees are allocated.

h.      Any Classified Employee to be affected by layoffs shall be given a minimum of fifteen (15) days notice.

i.      Any Classified Employee laid off pursuant to this Rule shall be placed upon the appropriate Layoff List and shall be treated in accordance with Rules 10.1(c) and 10.5.

## 11.14 RETIREMENT

To the extent consistent state and federal law, an Appointing Authority may adopt a mandatory retirement age of not less than seventy (70) years for Classified Employees serving in the capacity of firefighter or law enforcement officer.